**The People of the State of Illinois, Defendant in Error, v. Henry J. Fedele and Nicholas J. Collins, Plaintiffs in Error.**

**Gen. No. 38,760.**

Opinion filed December 9, 1936.

GRENVILLE BEARDSLEY, of Chicago, for plaintiffs in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, RICHARD H. DEVINE and MELVIN S. REMBE, Assistant State's Attorneys, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

After a trial before a court and jury, the defendants were found guilty of a charge of conspiracy to commit fraudulent and criminal acts in a primary election, held in the 18th precinct of the 26th ward, in the city of Chicago, on April 10, 1934. The penalty imposed as to each was confinement in the House of Correction for one year and a fine of $1.00. By writ of error it is sought to reverse the judgment entered in the cause. Several persons, including other election officials, who were included in the indictment with defendants and found guilty, are not included in the writ of error. No question is raised as to the indictment.

The grounds urged for reversal are that the evidence fails to prove the guilt of the defendants beyond a reasonable doubt; that the verdict as to each was the result of passion and prejudice, engendered by the improper conduct of the State's attorney; that the court erred in excluding competent evidence on behalf of the defendants, and in admitting improper evidence offered by the State; that the court erred in refusing to issue a subpoena *duces tecum* for the production of competent material evidence, which was suppressed by the prosecution, and by including in its charge to the jury over specific objection, propositions which inaccurately stated the law, and others which were in the abstract and not applicable to the issues before the jury.

On the trial, a witness for the State named Noss testified in substance that he was an instructor in

sociology, was a resident of Chicago, and had been a student at the University of Chicago; that he was an instructor in sociology at Purdue University, and had been a teacher at Phillips Academy at Andover, Massachusetts; that on the day of the primary election, he had received the credentials of the county court of Cook county as a watcher, and that he had attended the election in the 18th precinct of the 26th ward on that date; that he arrived at the polling place about ten minutes of six in the morning; that the polling place was in a barber shop at 448 Milwaukee avenue in the city of Chicago; that the judges and clerks with their election paraphernalia were sitting at tables when he arrived; that there was a passageway between the tables where the judges and clerks sat and the polling booths, which passageway was about three or four feet wide; that among the acting judges was the defendant Fedele; that before the balloting began and when the ballots were first opened and found to be unmarked, they were placed on one of the tables and that Fedele put his initials on each ballot before it was handed to the voter; that a number of times during the time the election was being held, Fedele, or some other election official, went into the polling booth with a voter to assist such voter; that Fedele's attention was called to the fact that before assistance could be rendered to a voter by an election official, it would be necessary that the voter make an affidavit to the effect that he needed assistance, and that Fedele answered this suggestion by saying that ''We will take care of that this evening.'' This witness also testified to the effect that he saw the defendant Collins and a man named Terry around the polling place during the entire day of the election (Terry was indicted, but was found not guilty); that a number of men who were not judges or clerks were crowded around the table, and surrounded the table on all sides;

that after the election was over, the ballots were sorted, and the officials started the count; that Fedele sat next to the ballots, and that Collins, who was not an election official, sat at the same table and immediately adjacent to Fedele; that as Fedele picked up the ballots, he saw Collins touch the corners of the ballots, and that at that time, Collins had a piece of lead in his hand, and that he saw Collins lift up the corners of the ballots which had not been tallied and make marks thereon; that he, Collins, lifted the ballots up and made marks underneath, and that on some occasions, Collins marked a ballot that was on top and in plain view, and that on other occasions, he marked on the underneath ballot and on the lower right hand corner of the ballot, and that at this time, Collin's hand was about a foot from Fedele's arm. This witness further testified that about 10 o'clock in the evening, a man came into the polling place with a sheet of paper; that he stated to the election officials, ''There is no use counting all those ballots. Here I have it all figured out, put down these numbers''; that after the man made this statement, he said, ''Here is the totals.''

At this point in the trial, the attorneys representing the defendants, and outside of the presence of the jury, demanded that the court direct the State's attorney to produce in court a supposed transcript of the statement of this witness made in the State's attorney's office, for the purpose of determining whether or not the witness was testifying to the same state of facts as he had stated to the State's attorney. The record indicates that the court denied the request of defendants' attorneys in reference to the matter mentioned. We find no error in this ruling.

Noss further testified to the effect that the clerks of election put the numbers given by the person mentioned in the total columns on the tally sheets; that at this time, the defendant Collins was seated at the

table with some of the judges and clerks of election; that he saw three or four watchers touch, handle, move and mark the ballots, tally sheets and poll books; that after the clerks made the tallies as given by the outsider, he saw the defendant Fedele sign the returns of the election. Noss testified that while the ballots were being counted by the defendant Fedele, the defendant Collins stayed at Fedele's right hand during most of the time when such counting was going on; that during that time, as previously stated, he saw Collins with a short piece of lead in his hand, and that the piece of lead appeared to be stuck on Collins' finger or thumb nail; that he distinctly saw Collins mark crosses on ballots, sometimes on top, and sometimes underneath.

A handwriting expert produced by the State was shown the ballots voted at the election in question, and he testified in substance that, in his opinion, certain cross marks made thereon were made by a different person than the one who marked the remainder of the ballot, and that when he last examined the ballots they were in the same condition as when they were examined by him in the county court in April, 1934, prior to the trial. As to certain other ballots, he testified that some of the marks on certain ballots were made by a soft pencil and some by a hard pencil, and that as to certain other ballots, the cross in the square before certain names had been erased, and a cross inserted before the name of another person, a candidate for the same office.

Several witnesses produced by defendants testified that they were present at the polling place during the times in question, and that they witnessed the counting of the ballots in the evening after the time of the balloting had ceased. They all testified that they did not witness any of the occurrences testified to by the witness Noss. Fedele testified that no one but himself

and the other election officials touched the ballots after they were taken from the ballot box, and while they were being counted. Collins denied that he either touched or placed marks on any ballots. Fedele does not dispute the testimony made by the witness Noss to the effect that a stranger came into the polling place with certain figures that were placed on the tally sheets by the judges and clerks, as given by this person, and that he, Fedele, as judge, signed the returns as thus made up. The evidence indicates that Fedele and Collins had been intimately acquainted with each other for more than two years prior to the date of the election in question, and that when Fedele was appointed election judge, he gave Collins' name as a reference. It is insisted that the evidence referred to does not show a conspiracy to commit the offense charged in the indictment.

On the question as to what is sufficient evidence to prove a conspiracy, the Supreme Court said in the case of *Ochs v. People,* 124 Ill. 399:

"As respects the law governing in the proof of a conspiracy, it is stated by Archbold, as follows: 'A conspiracy is proved, either expressly, or by the proof of the facts from which the jury may infer it. It is seldom proved expressly nor can a case easily be imagined in which that is likely to occur, unless where one or more of the persons implicated in the conspiracy consents to be examined as a witness for the prosecution. In nearly all cases, therefore, the conspiracy is proved by circumstantial evidence, namely, by proof of facts from which the jury may fairly imply it. It is usual to begin by showing that the defendants all knew each other, and that a certain degree of intimacy existed between them, so as to show that their conspiring is not improbable; and if to this can be added evidence of any consultations or private meet-

ings between them, then there is a strong foundation for the evidence to be subsequently given, namely, of the overt acts of each of the defendants in furtherance of the common design. But although the proof above mentioned is desirable, because it satisfies the jury as you proceed, and they are better able to apply the evidence of the overt acts when it is afterwards given, yet it is not essentially necessary, as the jury may imply the conspiracy of all from the overt acts of each.' Archbold's Crim. Pr. and Pl. 619.

"Mr. Greenleaf says: 'The *evidence* in proof of a conspiracy will generally, from the nature of the case, be *circumstantial*. Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed, in terms, to have that design, and to pursue it by common means. If it be proved that the defendants pursued, by their acts, the same object, often by the same means, one performing one part, and another another part of the same, so as to complete it, with a view of the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. Nor is it necessary to prove that the conspiracy originated with the defendants, or that they met during the process of its concoction, for every person entering into a conspiracy or common design already formed, is deemed, in law, a party to all acts done by any of the other parties, before or afterwards, in furtherance of the common design.' 3 Greenleaf on Evidence, sec. 92.

"We have quoted thus at large, because what is thus announced seems completely to meet and dispose of the point as to there being conspiracies in groups, and not one general conspiracy, and of the conspiracy being of another kind than the one charged, and of objections on that score to the reception of the evidence of

individual acts which was received, and to be in justification of instructions which were given.''

Defendants complain of the instructions given to the jury, because of repetitions made on the same propositions of law. While we must conclude that too many instructions were given, still, under the state of the record, we cannot say that the jury were prejudiced thereby. Objection is particularly made to one of the instructions because, it is asserted, the instruction assumes that the defendants were guilty. The portion of the instruction objected to is as follows:

''The indictment charges the defendants with the crime of conspiracy, in that said defendants did unlawfully, wilfully, deceitfully, fraudulently, and corruptly conspire, combine, confederate and agree together with each other and with divers other persons whose names are unknown to said grand jurors, with the fraudulent and malicious intent, unlawfully, wrongfully, wickedly, wilfully, knowingly, fraudulently and corruptly to commit fraud, corruption and manifest misbehavior, and cause, advise, induce and procure the primary judges and primary clerks to unlawfully, wilfully, knowingly and fraudulently make a false canvass of the votes cast in the 18th Precinct of the 26th Ward of the City of Chicago, County of Cook and State of Illinois, at said primary held in the aforesaid precinct, on, to wit:'' etc.

It is insisted that by the words, ''the indictment charges the defendants with the crime of conspiracy, in that said defendants *did* unlawfully,'' etc., commit the act charged, that it states as a fact that the court concluded and so told the jury that the defendants were guilty. We are of the opinion that no such conclusion could be predicated upon the instruction. We are further of the opinion that there was sufficient evidence before the jury to justify the verdict and we do

not feel that we are warranted in substituting our judgment for that of the court and jury who saw and heard the witnesses. The judgment is affirmed.

*Affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.